| NONPRECEDENTIAL DISPOSITION |
| --- |
| To be cited only in accordance with Fed. R. App. P. 32.1 |

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted May 1, 2019[*]
Decided May 1, 2019

**Before**

FRANK H. EASTERBROOK, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

AMY J. ST. EVE, *Circuit Judge*

No. 18-3552

| | |
| --- | --- |
| WENCESLAO ARREDONDO, | Petition for Review of an Order of the |
| *Petitioner*, | Board of Immigration Appeals. |
| | |
| *v.* | No. A089-732-135 |
| | |
| WILLIAM P. BARR, | |
| Attorney General of the United States, | |
| *Respondent*. | |

**O R D E R**

Wenceslao Arredondo, a 49-year-old Mexican citizen, challenges the denial of his application for withholding of removal based on his fear of persecution or torture from cartels if he returns to Mexico. He argues that he did not receive a fair hearing before an immigration judge. We deny his petition for review.

---

[*] We have agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

In 2017, Arredondo was convicted of a felony forgery offense. KY. REV. STAT. ANN. § 516.030. Four days later, the Department of Homeland Security charged him as removable for having been convicted of an aggravated felony. 8 U.S.C. § 1227(a)(2)(A)(iii), § 1101(a)(43)(R). Arredondo requested withholding of removal and protection under the Convention Against Torture based on his fear of returning to Mexico. An asylum officer found that Arredondo had a credible fear of persecution and referred his case to an immigration judge for further proceedings.

At the hearing, Arredondo testified via televideo about a two-year period (1986 to 1988) when he was forced by farm owners to work on their marijuana farm in northwest Mexico. The farm owners, he suspected, are affiliated with the Sinaloa Cartel. The details are sparse, but Arredondo said that he was not allowed to leave, not paid for his work, and not permitted contact with his family. He was also physically abused several times. After two years at the farm, Arredondo managed to flee to the mountains with money that he stole from the farm owners. He initially went into hiding, but over the next few years moved about between central and northern Mexico. Fearing that the cartel would catch up to him, he eventually entered the United States without inspection in 1992. He has lived in the United States ever since (other than a year spent visiting his sick mother). He fears returning to Mexico, he explained, because the cartel has become more organized and would exact revenge for the money that he stole 30 years ago. He added that in 1997 his sister had received a threatening phone call from an unknown caller, saying that Arredondo had been kidnapped (even though by this time he was in the United States) and demanding a ransom.

The immigration judge denied Arredondo's application for relief from removal. The IJ first determined that Arredondo's felony forgery offense was not a "particularly serious crime" that would have disqualified him from withholding of removal under either the Immigration and Nationality Act, 8 U.S.C. § 1231(b)(3), or the Convention Against Torture, 8 C.F.R. § 208.16. The IJ then determined that Arredondo had not demonstrated past persecution or a fear of future persecution based on a protected ground. *See* § 1231(b)(3). To the extent that Arredondo might base his claim on membership in a particular social group (specifically victims of cartel violence), the IJ determined that Arredondo was not situated that differently from persons "across a wide swath of Mexican society" who had crossed the path of the cartels. As for Arredondo's claim for withholding under the Convention Against Torture, the IJ concluded that Arredondo had not shown that he would face a substantial risk of torture if he returned to Mexico because no one has tried to harm him in the last 30 years and he had failed to establish that he could not reasonably relocate within Mexico.

The Board of Immigration Appeals generally adopted and affirmed the IJ's decision. The Board also rejected Arredondo's argument that he was not afforded a fair hearing (he contended, for instance, that he was "interrogated" by the IJ, the IJ interrupted his testimony by asking "unnecessary" questions, and the IJ "manipulated" the proceeding in order to deport him). The Board concluded that the record did not contain any indication of unfairness in the hearing.

In this petition, Arredondo does not contest removability for having been convicted of an aggravated felony, 8 U.S.C. § 1227(a)(2)(A)(iii), and instead raises only a broad due-process challenge to his hearing before the IJ. He argues that his hearing was unfair because the interpreter incorrectly translated his testimony and the IJ interrupted his testimony by asking unnecessary questions to "confuse" him.

Arredondo's due-process rights were not violated because he was afforded a full and fair hearing and he cannot show that any of the purported deficiencies prejudiced him. *See Souley v. Holder*, 779 F.3d 720, 724 (7th Cir. 2015). Arredondo argues that his testimony was mistranslated, but he does not specify what part was mistranslated to his detriment. He also contends that the IJ acted improperly by interrupting his testimony with questions, but the IJ has authority to question the applicant directly, and the questions were not inappropriate. *See Barragan-Ojeda v. Sessions*, 853 F.3d 374, 381–82 (7th Cir. 2017). Arredondo also has not identified any instance when the IJ exhibited hostility or bias, or asked questions meant to confuse him, such that he suffered substantial prejudice.

The petition for review is DENIED.